IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL S. LYONS, SR. | : | CIVIL ACTION |
| | : | |
| v. | : | No.: 08-94 |
| | : | |
| JACK R. MENTZER, et al. | : | |

**MEMORANDUM AND ORDER**

**Juan R. Sánchez, J.**                                                                              **October 2, 2008**

      Michael S. Lyons, Sr., a police officer with the Elizabethtown Borough Police Department, brought this 42 U.S.C. § 1983 action against Chief of Police Jack Mentzer, Lieutenant Joseph Ditzler, and the Elizabethtown Borough alleging retaliation for exercising his First Amendment right to speak on matters of public concern.  Defendants move for summary judgment arguing, *inter alia*, Lyons's statements are not First Amendment protected speech because they were made pursuant to his official duties, and his claim must fail.  I agree with Defendants and will grant summary judgment.

**FACTS**[1]

    Lyons has been a police officer with the Elizabethtown Police Department since 1998.  Both Mentzer and Ditzler are Lyons's superior officers.  It is undisputed Lyons made the following statements regarding fellow officers' failures properly to perform their duties:

- In 2003, when Lyons became aware Ditzler had failed to follow up on a rape report, he informed Chief Dennis Landvater, the Chief of Police at the time.

- In 2003 or 2004, Lyons complained to Landvater that Ditzler was retaliating against

---

[1]When considering a motion for summary judgment, I must draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

1

    Lyons for Lyons's reporting Ditzler's failures to follow up on criminal investigations.

- Lyons complained to supervisors that Mentzer was returning reports to Lyons for failing to put periods after abbreviations.

- In February 2007, Lyons complained to Nicolas Finicle and to Mentzer that Finicle's interference with Drug Task Force operations was impacting the safety of officers and the public.

- On about March 8, 2007, Lyons properly cited an individual named Earl Kean without notifying Mentzer although Mentzer had asked Lyons to "keep him in the loop" regarding Kean.

- In March or June, 2007, Lyons reported to the Drug Task Force that Finicle had unlawfully seized marijuana and drug paraphernalia from areas outside of his jurisdiction and was improperly discussing confidential information with civilians.

Lyons alleges the following retaliatory acts ensued:

- In 2003, Ditzler attempted to have Lyons "written up" for failing to follow the chain of command.

- From 2003 through the present, Mentzer returned reports to Lyons for trivial errors and reported Lyons for failing to record his lunch on logs, although other officers were not disciplined for failing to record their lunches.

- On April 20, 2006, Mentzer and Ditzler were on a five-member hiring panel that hired another individual instead of Lyons for a detective position.[2]

- In February 2007, Mentzer issued Lyons a notice of violation for failing to notify Mentzer about the Kean citation.

- Lyons was assigned to serve as a liaison with the Drug Task Force in 2006, but after he complained about Finicle's interference, in March 2007, Mentzer removed Lyons

---

[2]In his Complaint, Lyons alleged he scored, or was tied for, the highest number of evaluation points qualifying him for the detective position. At oral argument, however, Lyons did not dispute the evidence Defendants presented showing, of the four candidates for the position, Lyons actually came in second. Lyons also did not dispute Defendants' demonstration that even excluding Mentzer and Ditzler's scores, Lyons still would have been in second place. The resulting scores of the full five-member hiring panel for the four candidates were 81.8, 78.6, 76.0, and 76.0, with Lyons scoring 78.6. The panel's scores without Mentzer and Ditzler's scores totaled 84.7, 83.0, 74.7, and 74.0, with Lyons still placing second.

>   from his liaison assignment and replaced him with Ditzler.
>
> •   In April 2007, Mentzer denied Lyons's request for compensatory time off from work.
>
> •   In December 2007, Mentzer placed a cap on Lyons's budget for the purchase of clothing and boots.
>
> •   In June 2007, after Lyons reported Finicle's misconduct to the Drug Task Force, Mentzer lobbied on Finicle's behalf and informed the Drug Task Force that Finicle was a fine officer who was being mistreated and misrepresented by Lyons. Lyons alleges Mentzer did this to impair Lyons's credibility and to deflect a proper analysis and evaluation of Finicle's performance.
>
> •   Following Lyons's complaints of Finicle's misconduct, Lyons was harassed and disciplined for petty and nonexistent infractions while Finicle was not disciplined for improperly completing incident reports. Mentzer and Ditzler would also remind Lyons of well-established police procedures in a condescending and critical manner.

**DISCUSSION**

Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court must not resolve factual disputes or make judgments of credibility; rather, "inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d. Cir. 1992). The non-movant, however, "may not rest upon the mere allegations or denials of the pleading; [his] response, by affidavits or as otherwise provided in [Rule of Civil Procedure 56] must set forth specific facts showing that there is a genuine issue for trial." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 171 (3d Cir. 2008)

(citing *Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001)).

To prove a violation of the First Amendment through retaliatory action, Lyons must show: (1) he engaged in protected speech and the value of his speech outweighed his employer's interest in the effective and efficient fulfillment of its responsibilities to the public (the *Pickering* balancing test),[3] (2) his employer responded with retaliation, and (3) the protected speech was the cause of the retaliation. *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003); *Connick v. Meyers*, 461 U.S. 138, 150 (1983). Further, a public employee's speech warrants constitutional protection when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made." *Reilly v. City of Atlantic City*, 532 F.3d 216, 228 (3d Cir. 2008) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006)). Determining whether a public employee spoke "as a citizen" revolves around the distinction between the employee's speech in a private capacity and

---

[3]The Supreme Court established a test in *Pickering v. Board of Education*, 391 U.S. 563 (1968) to determine the constitutionality of a public employer's discipline in retaliation for speech protected by the First Amendment. The court must balance a public employee's interest as a citizen in speaking about matters of public concern against the employer's interest in "promoting the efficiency of the public services it performs through its employees." *Id.* at 568. "When a public employee does not speak as a citizen about matters of public concern, there is nothing to balance against the government's interest in the efficiency of the services that it performs through its employees." *Connick v. Myers*, 461 U.S. 138, 147 (1983). "[W]hen a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.*; *see also City of San Diego v. Roe*, 543 U.S. 77, 82 (2004) ("*Pickering* did not hold that any and all statements by a public employee are entitled to balancing. To require *Pickering* balancing in every case where speech by a public employee is at issue, no matter the content of the speech, could compromise the proper functioning of government offices.").

speech pursuant to official duties.  The First Amendment does not protect public employees from employer discipline for speech made pursuant to their "employment responsibilities." *Garcetti v. Ceballos*, 547 U.S. 410, 410-11 (2006).

Lyons fails to show his statements to superior officers regarding fellow officers' misconduct in performing their duties was spoken as a citizen and was therefore speech protected by the First Amendment.  Defendants submit the affidavits of Mentzer, Ditzler, and Landvater, and a Law Enforcement Code of Ethics.  Def's Ex.'s 2-4.  Mentzer, Ditzler, and Landvater all attest it is a police officer's duty to report another officer's alleged failure to perform his job properly, especially where that failure involves questions of public safety.  The Code of Ethics requires officers to report any unlawful or unusual conditions or activities, and to enforce all current policies and procedures of the police department.  Def's Ex. 1, A.  Lyons has not responded with his own affidavits or otherwise set forth specific facts demonstrating there is a genuinely disputed factual issue for trial.  *See Sovereign Bank*, 533 F.3d at 171.

Lyons's allegedly protected speech involved his complaints to superiors, up the chain of command, regarding fellow officers failing to follow up on criminal investigations, unreasonably returning police reports for punctuation errors, interfering with Drug Task Force investigations, improperly issuing violation notices for work properly performed, unlawfully seizing drugs from other jurisdictions, and inappropriately discussing confidential police information with civilians.  Lyons's report regarding Ditzler's failure to follow up on criminal investigations was a result of Lyons's receipt of a call from an individual wanting further information about a rape report called in to Ditzler.  Lyons's complaints regarding his work being returned to him, violation notices and reprimands being issued unreasonably to him, and any matters relating to the Drug Task Force while

he was its liaison were related to his own work. Lyons's own reports were returned to him for alleged punctuation errors, and violation notices and reprimands, however ill-deserved, were issued specifically in response to Lyons's own work. In addition, his work as the Drug Task Force liaison required him to report any issues with the Drug Task Force. Finally, Lyons's report regarding Finicle's alleged misconduct in a criminal investigation was part of his reporting duties as an officer.

In *Garcetti v. Ceballos*, Ceballos, a deputy district attorney, informed his supervisors about inaccuracies in an affidavit used for a criminal investigation and recommended dismissal of the case. *Id.,* 547 U.S. at 1955. Subsequently, Ceballos was reassigned and denied a promotion. The Supreme Court held Ceballos did not speak as a citizen, explaining, "[t]he fact that his duties sometimes required him to speak or write does not mean his supervisors were prohibited from evaluating his performance." *Id.* at 1960. In *Foraker v. Chaffinch*, 501 F.3d 231 (3d Cir. 2007), three police officers reported hazardous conditions at a firing range and related governmental corruption, misconduct, and mismanagement to their supervisors. The officers claimed speaking out on these issues was not part of their job duty as expert firearms instructors at the firing range. *Id.* at 238. The Third Circuit held, however, because reporting problems at the firing range was among the tasks the officers were paid to perform, the officers' speech was pursuant to their employment duties when they made their concerns known through the chain of command. *Id.* at 241, 247. Similarly, the Third Circuit Court of Appeals in *Skrutski v. Marut*, 2008 WL 2787434 (3d Cir. July 18, 2008), held police officer Skrutski's complaints regarding fellow officers' misconduct were not protected First Amendment speech. By contrast, in *Pickering*, a teacher's letter to a local newspaper addressing issues including the funding policies of his school board had no official significance and was similar to letters submitted by citizens. *Pickering*, 391 U.S. at 563

Analogous to the statements made in *Garcetti*, *Foraker*, and *Skrutski*, Lyons's complaints concerned only matters related to his job, specifically, the duties of Elizabethtown Borough police officers, and he only voiced his complaints up the chain of command at work, rather than in a public forum. *See Foraker*, 501 F.3d 231; *Pickering*, 391 U.S. at 563. The complaints not only owed their existence solely to Lyons's professional responsibilities, Lyons's job responsibilities required him to report his fellow officers' misconduct. "Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Garcetti*, 547 U.S. at 1960.

Accordingly, because the statements at issue fall within speech made pursuant to employment responsibilities under *Garcetti* and because Lyons has not provided countering affidavits or specific facts showing a genuine issue for trial, I must grant Defendants' summary judgment motion.[4]

An appropriate Order follows.

---

[4] Additionally, Lyons's complaints regarding the return of his own reports for punctuation errors, personal reprimands, violation notices issued to him, and criticism of his work are of a highly personal nature, unlikely to be of public concern. *See, e.g.*, *Kline v. Valentic*, 2008 WL 2435579 at *2 (3d Cir. June 17, 2008) (concluding plaintiff's speech was not protected where plaintiff had a highly personal interest in the police misconduct alleged and because he complained up the chain of command and not in any public forum).